OPINION OF THE COURT
Edward H. Lehner, J.
The issue before the court is whether Tax Law § 186-a (2-a) is unconstitutional because the benefit of the deduction provided therein is directly related to the percentage of a telephone company’s property located in the State of New York.
*807 Plaintiff, American Telephone and Telegraph (AT&T), moves pursuant to CPLR 3212 for summary judgment declaring that said section, as amended by chapter 190 of the Laws of 1990, violates the Commerce Clause of the United States Constitution as well as the Equal Protection and Due Process Clauses of the Federal and New York State Constitutions. Defendant New York State Department of Taxation and Finance (the State) cross-moves for summary judgment dismissing the complaint.
FACTS
Local telecommunication service is organized and operates by joining together local exchange carriers (LECs), such as New York Telephone Company, into local access and transport areas (LATAs). An example of a LATA is that encompassing New York City, Long Island, Westchester, Putnam and Rockland Counties as well as Greenwich, Connecticut. Calls within a LATA are local calls.
In contrast, long-distance carriers, such as AT&T, provide telecommunication service only between, and not within, LATAs. To accomplish this inter-LATA service, long-distance carriers pay an access fee to the LEG at each end of the telephone call for the cost to the LECs of providing and maintaining the facilities used in the inter-LATA service. The long-distance carrier charges its customer the access fee on each call and then forwards that amount directly to the appropriate LEG.
Under the 1990 amendments to the Tax Law, the LEG is required to include the access fee paid by the long-distance carrier in its gross receipts and it is taxed on such amount. The dispute herein relates to the Tax Law’s treatment of access charges as they apply to the tax liability of long-distance carriers.
The gross receipts of long-distance carriers having operations outside of New York State are allocated, in determining New York State taxable receipts, pursuant to section 184 (4) (c) of the Tax Law on the basis of the proportion of a long-distance carrier’s property that is located in New York. The percentage allocated to AT&T under this formula is approximately 5%. AT&T does not challenge the apportionment formula or the percentage assigned to it.
While an access fee is included in the recipient long-distance carrier’s gross receipts, a deduction for the same *808 amount is allowed to the company. Specifically, Tax Law § 186-a (2) permits long-distance carriers to take a 100% deduction for access fees paid for access within New York State. Section 186-a (2-a), the statute in dispute, provides in part that: "The deduction permitted in subdivision two * * * with respect to resold * * * telephone * * * service which was purchased in New York (including the provision relating to resold carrier access service) shall be allowed against interstate and international revenues prior to apportionment to New York” (emphasis added).
On November 2, 1991 AT&T filed a claim for a refund from the State for taxes paid as a result of the application of section 186-a (2-a) on the ground that the provision violates the Commerce Clause of the United States Constitution. AT&T asserted that the requirement that the access fee deduction be made prior to apportionment discriminates against long-distance carriers to the extent that they engage in interstate and foreign commerce because it unfairly and without justification provides a lower deduction to carriers having a higher proportion of property (and therefore business) outside of New York. AT&T points out that a wholly intrastate carrier, with which AT&T competes, would be able to deduct the access fees dollar for dollar, whereas AT&T, an international enterprise with approximately 5% of its business here, may only deduct 5% of its fees passed through to the same LEG. This, AT&T complains, amounts to impermissible protectionist pressure on business to conduct more activities in New York and discriminates against companies with a small percentage of their property here.
When its claim was denied, AT&T appealed the decision to the Division of Tax Appeals. At the time of argument of these motions, that appeal was still pending.
In this action for a declaratory judgment, AT&T is raising essentially the same arguments that are at issue in the administrative proceedings. AT&T also seeks a judgment ordering the State to refund $5,299,552 paid by it by reason of the tax provision in controversy.
In response, the State asserts: that this action is premature as AT&T has not yet exhausted its administrative remedies; that AT&T’s constitutional claims are baseless because section 186-a (2-a) does not unfairly discriminate between long-distance carriers in purpose or effect; and that this court is without jurisdiction to award AT&T the demanded refund *809 because only the Court of Claims has jurisdiction to grant monetary relief against the State.
DISCUSSION
The State’s argument that AT&T was required to obtain a final determination in the administrative proceeding before bringing the present action lacks merit. It is well established that a declaratory judgment action may be used to challenge the constitutionality of a taxing statute without exhausting the administrative remedies that the taxing authority may provide (Tully v Griffin, Inc., 429 US 68, 75 [1976]; Allstate Ins. Co. v Tax Commn., 115 AD2d 831, 834 [3d Dept 1985], affd 67 NY2d 999 [1986]; Two Twenty E. Ltd. Partnership v New York State Dept, of Taxation & Fin., 185 AD2d 202 [1st Dept 1992]; Empire State Bldg. Co. v New York State Dept. of Taxation & Fin., 185 AD2d 201 [1st Dept 1992]).
In determining whether New York’s access fee deduction violates the Commerce Clause by unjustifiably discriminating against companies based on the amount of business that they do in-State, "the foundation of our analysis is the basic principle that ' "[t]he very purpose of the Commerce Clause was to create an area of free trade among the several States” ’ ” (Westinghouse Elec. Corp. v Tully, 466 US 388, 402 [1984]). The Commerce Clause therefore functions as a limitation upon the power of the States, including their power to tax (Boston Stock Exch. v State Tax Commn., 429 US 318, 328 [1977]). "However important the state interest at hand, 'it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently’ ” (Lewis v BT Inv. Mgrs., 447 US 27, 36 [1980]). Accordingly, "a state tax that favors in-state business over out-of-state business for no other reason than the location of its business” improperly discriminates and is prohibited by the Commerce Clause (American Trucking Assns. v Scheiner, 483 US 266, 286 [1987]).
An example appears to be the most effective method of illustrating the operation of the statute and the parties’ arguments. Assume that AT&T, a second company with 50% of its business in New York, and a third entirely intrastate carrier each handled a $5 call from New York City to Maine, and the access fee on each call paid to the New York LEG was $1, and each company had total gross receipts of $100. Prior to *810 the 1990 amendment of the Tax Law, the resulting New York tax base would have been $5 for AT&T; $50 for the 50% company; and $100 for the intrastate company. To eliminate the impact of the access fee on State taxable receipts, the amendment permits each company to deduct the $1 fee from its gross receipts. As a consequence, AT&T’s New York tax base is changed to $4.95 (5% of $99); the company with 50% of its property outside of New York now has a tax base of $49.50 (50% of $99); and the wholly intrastate company has a tax base of $99. Hence, it can be seen that the amendment did not affect the relative tax liabilities of long-distance carriers.
Looking at this example, AT&T asserts that the statute discriminates because the portion of the access fee that is deductible is determined solely by the amount of business each company does in New York, and that consequently AT&T receives a decrease in its State tax base of only 5 cents, while the 50% company receives a deduction of 50 cents, and the intrastate receives a deduction of the entire dollar.
AT&T’s analysis is faulty. The alleged discrimination based on the amount of its allowable deduction (as illustrated in the foregoing example) results simply from the fact that the higher the percentage of a company’s receipts that are taxable, the greater its benefit from each dollar of allowable deductions. This is similar in effect to the greater dollar benefit of an allowable deduction on a personal income tax return to a high tax bracket taxpayer than to one in a lower bracket. Since only 5% of AT&T’s receipts are allocated to New York, its benefit from the deduction is appropriately less than that of a carrier which has a greater percentage of its property in the State, and thus pays a greater percentage of its receipts to New York as a tax. This hardly justifies a claim of Commerce Clause discrimination.
If the statute were drawn as suggested by AT&T, i.e., that the access fee not be deducted prior to apportionment to New York, the illogical consequence would be that AT&T would be authorized to deduct $1 from the amount of its tax base when only 5% of its total receipts is included in the tax base. This would clearly result in a significant unjustified windfall to it.
AT&T next contends that the Tax Law is unfair because AT&T is required to include income from non-New York calls in its gross receipts without deduction of access fees paid on those calls in other States. For example, the access fees generated by a telephone call from Orlando, Florida to San *811 Diego, California would be included in AT&T’s gross receipts without deduction of access fees passed through on the call by AT&T to the LECs. In essence, AT&T asserts that because many of its access fees are paid outside of New York, it is disadvantaged under the tax scheme.
AT&T’s analysis fails to take into account the effect of the 5% apportionment formula applied to its gross receipts to determine its New York tax base. It is undisputed that New York is required to tax AT&T and similar carriers only for amounts that have a jurisdictional nexus with the State. (Westinghouse Elec. Corp. v Tully, 466 US, supra, at 397.) AT&T has acknowledged that the 5% formula used by the State to calculate the percentage of its receipts that has a nexus to New York is a legitimate measure of its State taxable receipts. Non-New York receipts, such as access fees received from completely out-of-State calls, have no nexus to the State and are eliminated from the New York tax base by reason of the 5% formula.
AT&T’s assertion that the section violates the Equal Protection and Due Process Clauses is without merit for the same reasons that the statute does not violate the Commerce Clause.
Accordingly, AT&T’s motion for summary judgment is denied and the State’s cross motion for summary judgment is granted, and the challenged statute is declared to be constitutional.